IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | CASE NO. 21-MJ-220 |
| MICHAEL JOHN LOPATIC, SR. : | |

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

On January 29, 2021, a federal grand jury sitting in Washington, D.C. returned an Indictment, charging the defendant Michael John Lopatic, Sr. for his role in the riot at the United States Capitol on January 6, 2021. The defendant was arrested at his home in Lancaster County on February 3, 2021, and the United States now respectfully requests that this Court detain the defendant pretrial so that he can be transferred to the District of Columbia to answer the charges against him.

The defendant is accused of obstructive and violent behavior. On January 6, 2021, the defendant and others sought to impede the certification of the 2020 Presidential election by invading the U.S. Capitol. His very presence in Washington that day was obstructive, in that he and others tried to halt a crucial function of our democratic government. But the manner in which the defendant tried to accomplish those ends is particularly troubling. Specifically, he and others stormed the Capitol, and in doing so, the defendant attacked one police officer, punching him repeatedly, and then stole the body worn camera of another police officer and disposed of it, destroying what would have undoubtedly been a crucial piece of evidence. Moreover, the defendant's actions that day were not spontaneous. Following the November Presidential election, the defendant posted to social media threatening messages about elected

leaders in Washington. Then, days before the riot, he posted a message in which he expressed his intention to gather at the Capitol and to fight.

Having engaged in such violent and obstructive behavior, the defendant should unquestionably be detained pending his transfer to the District of Columbia to face the charges against him. But the defendant is also a flight risk. He has no known ties to the District of Columbia and no recent work history. Although he also has no criminal history, he now faces a significant term of imprisonment in the face of overwhelming evidence against him. All of this gives him a compelling incentive to flee.

Together, these facts and those set forth below, establish that no condition or combination of conditions will reasonably assure the defendant's appearance as required and/or the safety of the community. The government therefore moves pursuant to 18 U.S.C. §§ 3142(e) and (f) for a detention hearing and pretrial detention of the defendant.

I. **THE FACTS**

In support of this motion, the government makes the following representations and proposed findings of fact:

    A. **Probable Cause and the Evidence in This Case**

A federal grand jury has already found probable cause that the defendant violated federal law when he rioted at the U.S. Capitol on January 6, 2021. Indeed, the evidence against the defendant is overwhelming and includes footage from body worn cameras of law enforcement officers, as well as the defendant's own words expressed through social media. The evidence in this case will establish the following facts, among others.

On January 6, 2021, a joint session of the United States Congress was scheduled to convene at the U.S. Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which took place on November 3, 2020.   Around 12:30 p.m. that day, a crowd assembled near the Capitol, and shortly after, a mob broke through the police lines, toppled the outside barricades protecting the Capitol, and pushed past the United States Capitol Police (USCP) and supporting law enforcement officers.   Similar assaults on the Capitol occurred throughout the afternoon.

Between 4:00 p.m. and 5:00 p.m., Officer C.M. ("C.M.") of the Washington D.C. Metropolitan Police Department ("MPD"), who was at U.S. Capitol to assist the USCP, assumed a post in an archway at the Capitol to prevent those gathered outside from accessing the building. From this archway, C.M. saw thousands of individuals, some of whom were throwing and swinging various objects at the officers. At one point, C.M. saw a group grab another MPD Officer, B.M., and drag him down the stairs.   C.M. watched as B.M. was engulfed by the violent mob and assaulted.

C.M., who was wearing his MPD uniform, attempted to come to the aid of B.M., but he was stopped by a rioter wearing clothing emblazoned with the emblem of the "Three Percenters," a far-right, anti-government militia group which advocates resistance to the U.S. federal government.   When C.M. attempted to bypass the rioter by pushing him aside with his baton, the defendant emerged from the crowd, climbed over a handrail, and charged at C.M. The defendant's actions were captured by C.M.'s body worn camera, as can be seen here:

 

After the defendant climbed the barricade, he assaulted C.M. by continuously punching him in the head. At one point, the defendant grabbed C.M. by the head and appeared to hit him with an uppercut, as reflected in the following images from the body camera of an officer behind C.M.:

 

After pummeling C.M., the defendant descended the steps of the Capitol and made his way to B.M., who at the time was surrounded by a group of protesters trying to protect him from the violent mob.  Upon reaching B.M., the defendant reached through the human shield and stole B.M.'s body worn camera.   That the defendant had the foresight to traverse an angry mob to take what would have been a crucial piece of evidence in bringing those who attacked the officers – and the Capitol – to justice shows that he was not merely swept up by the passions of the day.   Rather, the defendant was there to fight, and he had no intention of being held accountable for his actions.   Consistent with that, upon his arrest, the defendant admitted to agents with the Federal Bureau of Investigation that he stole B.M.'s body camera and that he disposed of it on his way home to Lancaster County.



Importantly, the defendant's own words expressed through social media in the weeks leading up to the riot show that his actions at the Capitol on January 6, 2021 were not spontaneous.   Immediately following the November election of now-President Joseph R. Biden, Jr. and now-Vice President Kamala Harris, the defendant posted to social media that the election

was a "Call to Arms." He also posted a photograph of two dead pheasants, apparently shot by the defendant. In the caption, he noted that he named the dead birds "Joe and Kamala," a clear reference to Joe Biden and Kamala Harris.





In the weeks following the November election, the defendant posted more hunting photographs, accompanied by captions in which he appeared to name the dead birds after Democratic congressional leaders, including then-Senate Minority Leader Chuck Schumer, the Speaker of the House of Representatives Nancy Pelosi, and Representatives Adam Schiff and Jerry Nadler, both of whom acted as Impeachment managers during the Impeachment of President Donald J. Trump.





**Michael J. Lopatic**
November 6, 2020

Another good flush for this pup. I got her while going low running her mouth. I called this old bird Nancy.





**Michael J. Lopatic**
November 12, 2020

The dog had probably 20 flushes today. We just happened to be there right as a stocked. I couldn't even shoot a bird for the first hour. Like fish in the barrel. I just used them to train the dog. When I was ready to leave I decided to get my limit. The first little fat bird wouldn't even get off the ground. I shot him in the head and named him Nadler. The next one was flying and doing some aerial shifts. I called him shifty Shift. He also got shot in the head. I did find one pellet on his body though. Dem birds where going down. One shot, one kill. Great Marine corps therapy session today.



Then, days ahead of the riot at the Capitol, the defendant posted to social media and advocated for others to "ASSEMBLE ON THE CAPITAL JANUARY 6, 2021," and pledged, "UNITED WE STAND, GO FORTH AND WE FIGHT."



Given the defendant's apparent wish to do harm to government officials, the fact that he has access to firearms, and that he has shown that he will not hesitate to act violently toward those who try to stop him, including even uniformed police officers, the defendant unquestionably poses a danger to the community. He should therefore be detained pending trial.

**B.      Maximum Penalties**

The defendant faces the following statutory maximum sentences, per count of conviction: on Count Four (assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1)), eight years' imprisonment, three years' supervised release, a $250,000 fine, and a $100 special assessment; on Count Six (civil disorder, in violation of 18 U.S.C. § 231(a)(3)), five years' imprisonment, three years' supervised release, a $250,000 fine, and a $100 special assessment; on Count Seven (civil disorder, in violation of 18 U.S.C. § 231(a)(3)), five years' imprisonment, three years' supervised release, a $250,000 fine, and a $100 special assessment; on Count Eleven (entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1)), one year of imprisonment, one year of supervised release, a $100,000 fine, and a $100 special assessment; on Count Twelve (disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2), one year of imprisonment, one year of supervised release, a $100,000 fine, and a $100 special assessment; on Count Thirteen (engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4)), one year of imprisonment, one year of supervised release, a $100,000 fine, and a $100 special assessment; and on Count Fourteen (violent entry and disorderly conduct in a Capitol building, in violation of 40 U.SC. § 5104(e)(2)(F)), six months' imprisonment, one year of supervised release, a $5,000 fine, and a $100 special assessment.

The defendant therefore faces the following total statutory maximum sentence: twenty-one years' and six months' imprisonment, a three-year period of supervised release, a $1,055,000 fine, and a $700 special assessment. Although the defendant has no criminal history, the prospect of a significant term of imprisonment gives the defendant a compelling incentive to flee.

### C.  Ties to the Community / Employment

Although the defendant is a resident of this district, he has no known ties to the District of Columbia where he has been charged. Additionally, the defendant is unemployed. Thus, the Court can have no guarantee that the defendant will appear in the District of Columbia, as required.

## II.  CONCLUSION

The defendant has demonstrated a tendency toward violence and a willingness to impede and obstruct the right and lawful function of government. He also has no ties to the district in which he has been charged and the potential sentence in this case gives him a reason to flee. It is clear then that the defendant is both a danger to the community and a risk of flight. Considering all of the factors set forth above in light of the substantial sentence the defendant faces, there is no combination of conditions that will reasonably assure his appearance in the District of Columbia and/or the safety of the community. He should therefore be detained pending trial.

WHEREFORE, the government respectfully submits that its Motion for Pretrial Detention should be granted.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


 /s Timothy M. Stengel
TIMOTHY M. STENGEL
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CASE NO. 21-MJ-220 |
| MICHAEL JOHN LOPATIC, SR. | : | |

**PRETRIAL DETENTION ORDER**

AND NOW, this 9th day of February, 2021, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant violated federal law when he participated in a riot at the United States Capitol on January 6, 2021.

2. The evidence in this case is strong and includes footage from body worn cameras of law enforcement officers, as well as the defendant's own words expressed through social media, establishing, among other things:

   a. While engaged in a riot at the U.S. Capitol, the defendant charged and then assaulted an officer with the Washington D.C. Metropolitan Police Department ("MPD").

   b. The defendant then stole the body worn camera of another MPD officer and later destroyed it.

   c. The defendant's actions that day were not spontaneous, as demonstrated by him posting to social media threatening messages about government officials.

3. The total maximum statutory penalty the defendant faces is twenty-one years' and six months' imprisonment, a three-year period of supervised release, a $1,055,000 fine, and a $700 special assessment. Accordingly, the defendant has a substantial incentive to flee.

4. The defendant has a lack of community ties to the district in which he has been charged, and he is currently unemployed.

5. The strength and nature of the case against the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE HENRY S. PERKIN
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention and Proposed Order was served on all counsel of record via the Court's electronic filing service.

      /s/ Timothy M. Stengel
TIMOTHY M. STENGEL
Assistant United States Attorney

Date: February 9, 2021